Phillip **KEMP**, Plaintiff-Appellant,

v.

**BIRMINGHAM NEWS COMPANY,**
Defendant-Appellee.

No. 77–2475.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1979.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant.

John D. Quenelle, James C. Barton, Birmingham, Ala., for defendant-appellee.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Phillip Kemp, an employee of The Birmingham News, sued that company for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.* He alleged numerous discriminatory employment practices surrounding his demotion in 1974 from electrician trainee to general maintenance worker. In granting summary judgment for the defendant, the district court found that the action is barred under the doctrine of *res judicata* by a consent judgment in a prior action, *Cook v. The Birmingham News*, CA–73–M–514 (N.D.Ala. 1975). We affirm the district court.

The *Cook* consent decree arose out of a class action complaint filed against The Birmingham News in May, 1973. Prior to the entering of the decree, The News had had in effect an affirmative action program whereby it transferred older black employees, including Kemp, from jobs under the jurisdiction of the all-black union to previously all-white jobs. The black employees were designated as learners, but were paid full journeyman rates for the jobs they were learning. In May, 1973, three black employees filed the complaint against The News on behalf of all other persons similarly situated and on behalf of The Birmingham Printing Specialties and Paper Products Union, alleging extensive discriminatory practices by The News and several unions with which it had contracts. The *Cook* complaint charged such discriminatory practices as the establishment of a system to continue a long-standing policy of limiting employment and promotional opportunity because of race, racially segregated departments and job classifications, unequal training opportunities, assignments of black employees to less desirable jobs, unequal pay, discriminatory testing and harassment of black employees in formerly all-white departments.

Pursuant to the affirmative action program, Kemp had been transferred from his job under the jurisdiction of the all-black union to the position of electrician learner. Kemp contends that extensive harassment occurred during this period. In November, 1974, Kemp's foreman declared that Kemp was incompetent to be an electrician and Kemp was transferred to general maintenance worker at a scale of pay lower than that of an electrician learner but higher than his pay in his previously all-black job. Kemp filed a separate claim with the EEOC in November, 1974, concerning his demotion. The same attorney representing the class in *Cook* also represented Kemp on an individual basis.

On March 25, 1975, a consent decree was entered in *Cook v. The Birmingham News* which approved the affirmative action program. The court directed that notice of the terms of the decree be given to the class [1] by posting copies in at least two conspicuous places on the company's premises. Kemp, a member of the union involved, fell within the class defined in the consent decree. He was also a member of a sub-class named in the consent decree that was awarded back pay and he received $2,000 as a result.

On appeal, Kemp contends that the district court erred in holding that he was precluded from litigating employment discrimination practices in the instant case by the doctrine of *res judicata*. Specifically, plaintiff urges that, because the complaint in *Cook* did not allege "downgrading" practices such as layoffs, reductions in force, disciplinary suspensions, demotions or terminations, the prior consent decree involved a different cause of action from the present case. He argues that the complaint in *Cook* requested injunctive relief only against discriminatory "upgrading" practices in hire, promotion or transfers such as back pay and

---

1. The class was defined as follows:

   All individuals who are employed, or have applied for employment, or may be employed in the future, and who may claim to have been discriminated against because of their race in regard to hire, tenure, or promotion or transfers, in connection with employment in the mechanical departments of the Company's newspaper, shall constitute an appropriate class.

injunctive relief against further harassment. He also claims that the decree did not involve any question of class-wide harassment. We find these arguments unpersuasive.

██ For a prior judgment to bar an action on the basis of *res judicata*, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases. *Stevenson v. International Paper Co.*, 516 F.2d 103, 108 (5th Cir. 1975). The last prong of this test is at issue in this case. Various tests have been advanced to determine whether the substance of two actions is the same for *res judicata* purposes: Is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment? Would the same evidence sustain both judgments? *Acree v. Air Line Pilots Association*, 390 F.2d 199, 201 (5th Cir.), *cert. denied*, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968). This Court has recognized that the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action. *Stevenson v. International Paper Co.*, 516 F.2d 103, 109 (5th Cir. 1975).

In applying the doctrine of *res judicata*, it is also important to keep in mind that *res judicata* is a principle of peace. " 'Under its influence an end is put to controversies. Parties and their privies are made to abide definitive and final judgments and litigations are concluded'. . . . [T]he rule of *res judicata* does not go on whether the judgment relied on was a right or a wrong decision. It rests on the finality of judgments in the interest of the end of litigation and it requires that the fact or issue adjudicated remain adjudicated." *Id., quoting Bennett v. Commissioner of Internal Revenue*, 113 F.2d 837, 839–40 (5th Cir. 1940). It is against these principles that we must test the effect of the prior consent decree on the issues Kemp seeks to litigate in this case.

Plaintiff relies principally on *Stevenson v. International Paper Co., supra*, in arguing that the cause of action here differs from that involved in *Cook*. *Stevenson*, although not directly on point, illustrates that it is important to examine whether the first judgment covered a narrower range of issues than did the second lawsuit. The *Stevenson* case was a class action brought by black employees of International Paper Company against their employer and various labor unions. The complaint asserted racial discrimination in two categories: first, transfer and promotion practices that were discriminatory and, second, practices that, although neutral on their face, perpetuated the effects of past discrimination. Two earlier consolidated cases had been brought on behalf of substantially the same class against the same labor unions, but not against the employer.

The Court in *Stevenson* found that the wrongs for which redress was sought in the earlier consolidated cases were (1) the merger of an all-black local union into two previously all-white local unions without protective transitional arrangements and (2) the alleged failure of the two previously all-white locals to represent fairly the interest of their new black members. The *Stevenson* Court held that the earlier cases, brought solely against the labor unions, barred relitigation of union practices involving the issues of merger and fair representation, but did not prevent litigation of joint union-company policies, such as transfer and advancement practices.

██ The situation in *Stevenson* is inapposite to the one at hand. The causes of action involved here are identical: harassment in a previously all-white position and transfer and demotion from that position. As noted, Kemp contends that his demotion was not covered by the *Cook* decree because the decree did not involve "downgrading" practices. The issues involved in the decree, however, were a "system" of "limiting the employment and promotional opportunity" of class members. Kemp attempts to distinguish "involuntary demotions" from the "transfers" mentioned in the decree be-

cause the class as defined includes only claimants of discrimination in hire, tenure, promotion or transfer. "Transfer" is not to be construed so narrowly as to preclude a demotion. It implies a wide range of discriminatory practices such as assigning blacks less desirable jobs than those given whites and providing unequal training opportunities. The cause of action advanced by Kemp—the inability of Kemp to move upward into a craft job from the learner position—appears on its face to fall within those covered by the *Cook* decree. Furthermore, the transfer from electrician learner to general maintenance worker occurred almost five months prior to the entry of the decree. It was brought to the attention of his attorney, who also represented the class of plaintiffs in *Cook*. Moreover, the transfer was part of the affirmative action program approved in the *Cook* decree. Thus the trial court correctly ruled that the facts of which Kemp complained were or could have been brought before the court in *Cook* because the same cause of action was involved and those facts occurred months before the *Cook* decree was rendered.

Kemp also argues that the *Cook* consent decree did not involve any question of class-wide harassment, but only sought to remedy an individual case of harassment. The consent decree dealt with a wide range of discriminatory practices, including the following:

I. The defendant Birmingham News, in response to charges of racial discrimination herein filed by the plaintiffs with the Equal Employment Opportunity Commission, have recently placed some black employees in traditional and heretofore all white departments but have failed to provide such recently advanced blacks with the training requisite to learning the new job.

Agent or agents of the defendant, Birmingham News, in concert with members of some of the defendant unions have on occasions so harassed new black employees assigned to such formerly all white departments as to render untenable the positions of such blacks in their new occupation. As a consequence, some black employees have elected to return to their former "black" job and the plaintiff Fred D. Williams persisted in maintaining his new assignment under the jurisdiction of the Birmingham Lithographers and Photoengravers International Union, Local No. 240, notwithstanding the constant harassment and unjustified annoyance visited upon him.

This section does not pertain only to the named individual. Because the allegation charges harassment of "employees," not "an employee," the section pertains to the class as a whole. Plaintiff was transferred from his job under the jurisdiction of the all-black union to a previously all-white job as electrician. His cause of action alleges harassment in that previously all-white position and by his transfer and demotion from that position. As such, his cause of action was specifically alleged and litigated in the *Cook* action. *See Acree v. Air Line Pilots Association, supra,* (broad allegations of racial discrimination include individual claims for discriminatory job assignments and back pay).

*Rutherford v. American Bank of Commerce,* 12 F.E.P. 1184 (D.N.M.1976), cited by the plaintiff, does not support his argument. In that case, the plaintiff filed a sex discrimination suit against her employer after she was discharged from her job. In a later suit, plaintiff charged that her employer had engaged in retaliatory conduct. The court held that the two cases involved separate causes of action, requiring different evidence. In the instant case, different facts, not different causes of action, were involved in the *Cook v. The Birmingham News* litigation.

█ The main purpose of a class action is to dispose of the claims of numerous parties in one proceeding. If the defendants in class action lawsuits for employment discrimination could not rely on the binding effect of consent decrees they would have no incentive to settle such cases. To repeat for the purpose of emphasizing, Kemp was a party to *Cook*; he received a $2,000 back-pay award. As part of the settlement of

the class action, Kemp was transferred from his all-black job to the formerly all-white electrician position. He was then transferred to a job that was lower paying than the electrician job, but higher paying than his former all-black position. In exchange for this, The News had its affirmative action program judicially approved, including the transfer and money awarded to Kemp.

Kemp contends that his attorney, who also represented the class in *Cook*, did not give him adequate notice of the pending *Cook* litigation. Because his attorney advised him to file a separate suit with the EEOC, Kemp argues that his harassment and demotion were not actually litigated in the *Cook* case. Furthermore, he claims that he was not properly advised as to the meaning of the consent decree in the tender of back pay made in March, 1975.

■ As a general rule, a judgment in a class action will bind the members of the class. The exception to this rule is grounded in due process. *Gonzales v. Cassidy*, 474 F.2d 67, 74 (5th Cir. 1973). The facts in this case indicate that this exception is not applicable; Kemp was adequately represented as a member of the class, had actual knowledge of the *Cook* litigation, received a back pay award, and had actually discussed the impending decree with his attorney.

■ To test whether a class suit will bind the members of the class requires a two-pronged inquiry: (1) Did the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) Does it appear after the termination of the suit that the class representative adequately protected the interest of the class? *Id.* The Fifth Circuit applies a test of "vigorous and tenacious" protection of the class members in determining the binding effect of prior litigation. *Id.* Plaintiff admits that the class representatives in *Cook* and their attorney "vigorously and tenaciously" protected the interests of the class up until the point of

giving notice of the pending consent decree. There, it is claimed, they failed.

Plaintiff cites numerous cases to emphasize the importance of adequate representation of class members during and after the settlement of a class action. *See, e. g., Gonzales v. Cassidy, supra.* In *Gonzales*, the Court held that, although the representative provided adequate protection up to the time the three-judge court entered its final order on remand, the representative's failure to appeal an order that denied retroactive relief to all members of the class except himself constituted inadequate representation of the class so that they were not bound by the judgment. Because Kemp received the same relief as all other members of the class, *Gonzales* is inapplicable.

Plaintiff relies on *Lewis v. Philip Morris, Inc.*, 419 F.Supp. 345 (E.D.Va.1976), *reversed on other grounds*, 577 F.2d 1135 (4th Cir. 1978), in which the plaintiffs had had no notice of an earlier class action suit, to argue that he should not be bound by the earlier determination in the *Cook* litigation.[2] Kemp admits, however, that when he was transferred from his job as an electrician he discussed the demotion with his lawyer. He was thus represented both individually and as a member of the class by the class attorney in the *Cook* litigation. Kemp had actual knowledge of the pendency of the consent decree through discussions with his lawyer and constructive knowledge through the posting of notice at the place of his employment.

■ Even assuming Kemp was incorrectly advised with respect to the effect of the *Cook* action, that problem centers around the adequacy of the counsel's representation of Kemp as an individual, not that of the class representative.

Recent decisions of this Court have reiterated the important role of adequate representation by class representatives in a prior action that is asserted as a bar to an

---

2. The lower court ruling concerning the *res judicata* issue was criticized on appeal. 577 F.2d at 1144.

absent class member's subsequent lawsuit. *See, e. g., Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457, 461–62 (5th Cir. 1978). *Grigsby* and its ilk involve vigorous prosecution of the named plaintiffs' claims at the expense of the class claims. In the instant case, however, the class representatives represented a relatively small class and each member of the class received equal awards of back pay and benefited equally from the judicially approved affirmative action program.

Accordingly, we AFFIRM the decision of the district court.