Bobby G. FREEMAN on behalf of himself
and the wrongful death beneficiaries of
Laura Freeman, Plaintiff-Appellant,

v.

LESTER COGGINS TRUCKING, INC.,
and Kenneth R. Deis,
Defendants-Appellees.

No. 85–4075
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 23, 1985.

J. Larry Buffington, David Shoemake, Collins, Miss., for plaintiff-appellant.

Aultman, Tyner, Weathers & Gunn, Jon Mark Weathers, H. Alexander Brinkley, Hattiesburg, Miss., for defendants-appellees.

Before REAVLEY, TATE, and HILL, Circuit Judges.

TATE, Circuit Judge:

This is a Mississippi diversity action. The plaintiff Freeman sues for the wrongful death, Miss.Code Ann. § 11–7–13 (1984 Supp.), of his infant daughter Laura, on behalf of himself and of four other statutory wrongful death beneficiaries (*i.e.,* Laura's mother and her three minor siblings). Freeman appeals from the dismissal of these claims on the ground of collateral estoppel. The district court based its dismissal on the circumstance that—in a previous suit brought by Freeman individually against the present same defendants for his own personal injuries arising from the same accident in which Laura was killed— Freeman's individual suit had been dismissed, upon a jury verdict exculpating the defendants of negligence in the accident.

We affirm the dismissal of Freeman's own wrongful death claim. However, finding no privity between him and the other wrongful death beneficiaries, we reverse the dismissal of the claims of the four other wrongful death beneficiaries, holding further that the doctrine of "virtual representation" does not justify the application of collateral estoppel.

I.

This litigation arises out of a collision in Mississippi between a vehicle driven by Freeman and a truck driven by the defendant Deis in the course of his employment with the co-defendant Lester Coggins Trucking, Inc. As a result of the collision, Freeman and a passenger in his vehicle sustained personal injuries, and two other passengers, including the present decedent Laura, Freeman's infant daughter, were killed. Four suits were filed in federal court for personal injuries or wrongful death, of which for present purposes we need note only the present suit (by Freeman for himself and as representing four other claimants as Laura's wrongful death beneficiaries), and the earlier-tried one by Freeman individually for his own personal injuries. The latter suit was dismissed after an adverse jury verdict that by special interrogatory found the same two defendants free of the same negligence asserted by the present suit.[1]

Based upon this adverse jury finding and the resulting dismissal of Freeman's action

---

1. Freeman also asserted in the present action that Lester Coggins Trucking, Inc. is liable for negligently entrusting a company vehicle to Deis. The record does not indicate whether Freeman asserted the same theory of recovery in the prior action. Under Mississippi law, however, liability cannot be imposed on an employer on a theory of negligent entrustment unless the employee is first found to be negligent. *Brown Oil Tools, Inc. v. Schmidt,* 246 Miss. 238, 148 So.2d 685, 687 (1963); *Hood v. Dealers Transport Company,* 459 F.Supp. 684, 685–86 (N.D.Miss.1978). Thus, whether or not Freeman raised the issue of negligent entrustment in the prior action is irrelevant for present purposes, since that issue is, for our purposes, the same as the issue of Deis' negligence.

for his own personal injuries, the district court granted the defendants' motion for summary judgment grounded on collateral estoppel.

## II.

■ Freeman's suit was dismissed in federal court. Consequently, although both it and the present suit are Mississippi diversity cases, "the doctrines of *res judicata* and collateral estoppel require application of the federal rule when, as in this case, a party seeks to estop a claim from being raised in a diversity action brought in federal court on the basis of an earlier determination made in a federal court sitting pursuant to its diversity jurisdiction." *Stovall v. Price Waterhouse Co.*, 652 F.2d 537 (5th Cir.1981). Federal law determines the res judicata and collateral effect given a prior decision of a federal tribunal, regardless of the bases of the federal court's jurisdiction. *Id.*

■ "Federal common law permits the use of collateral estoppel upon the showing of three necessary criteria[.]" *Hicks v. Quaker Oats Company*, 662 F.2d 1158, 1166 (5th Cir.1981). *See also Holmes v. Jones*, 738 F.2d 711, 713 (5th Cir.1984). The three criteria are:

(1) that the issue at stake be identical to the one involved in prior litigation;

(2) that the issue has been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

*Hicks, supra*, 662 F.2d at 1166; *Holmes, supra*, 738 F.2d at 713. All three of these requirements have been satisfied in the present case. The issue here, as in the first case, was based on Deis' negligence. This issue was actually litigated in the first case, and its determination there was a critical and necessary part of the judgment.

■ "[A] right, question, or fact distinctly put in issue and directly determined as a ground of recovery by a court of competent jurisdiction collaterally estops a party or his privy from relitigating the issue in a subsequent action." *Hardy v. Johns-Manville Sales Corporation*, 681 F.2d 334, 338 (5th Cir.1982). Freeman was clearly a party to the earlier suit for his own personal injuries. Despite Freeman's contention that the circumstance in the present suit that he is acting in a different capacity (*i.e.*, as wrongful death claimant) somehow makes collateral estoppel unavailable to the defendants, it is plain that in the present suit—as to *his own* claim for wrongful death damages—he is likewise a party suing in his individual capacity to recover damages due him. *See Jones v. Texas Tech University*, 656 F.2d 1137, 1143 (5th Cir.1981). Since Freeman had a full and fair opportunity in the first action to litigate the issue of Deis' negligence, we conclude that the district court acted properly in ruling that he is collaterally estopped from doing so again, in his individual capacity, in this action.[2]

We will therefore affirm the district court's dismissal on collateral estoppel grounds of Freeman's claim for damages due him individually because of Laura's allegedly wrongful death.

## III.

A different issue, however, is presented as to whether collateral estoppel should bar the wrongful death claims here asserted on behalf of the mother and siblings of Laura. They were not parties to the first suit by Freeman, brought by him individually for his own personal injuries. Although Free-

---

**2.** Throughout this litigation, the parties have viewed Bobby Freeman's wrongful death claim solely in terms of collateral estoppel. The district court did the same in reviewing and ruling upon the defendants' motion for summary judgment. This issue might perhaps better be viewed in terms of res judicata, since both suits concerned grounds for relief, though differing, that arose out of conduct complained of in the first action. *See Kilgoar v. Colbert County Board of Education*, 578 F.2d 1033, 1035 (5th Cir.1978). As explained in the text, however, collateral estoppel bars Freeman's wrongful death claim even if res judicata does not. Consequently, we need not decide here whether res judicata applies.

man himself as plaintiff brings the present action for their injuries in a representative capacity, the issue is whether *their* claims are precluded because of the adverse determination of *Freeman*'s individual claims in the earlier suit.

■ The ordinary rule is that a party appearing in a representative capacity for others is not bound by the determination of an earlier suit in which he appeared only in an individual capacity. *Sayre v. Crews,* 184 F.2d 723, 724 (5th Cir.1950) (determination of negligence in individual suit by the father had no preclusive effect in subsequent suit by father brought in representative capacity for his minor daughter); *Smith v. Hood,* 396 F.2d 692, 693–94 (D.C. Cir.1968) (no collateral estoppel; earlier determination in mother's individual suit of non-traumatic cause of husband's death does not bar subsequent suit by mother in her representative capacity for her children for their wrongful death damages arising from accident); 1B Moore's Federal Practice, ¶ 0.411[3] (1984); 18 Wright, Miller, and Cooper, Federal Practice and Procedure, § 4449, p. 414; Restatement (Second) of Judgments, § 36(2) (1982).

■ Likewise, viewing these present wrongful death claims as asserted on behalf of the mother and siblings of Laura, they would not ordinarily be precluded as barred by the unfavorable judgment in the first suit brought by their husband-father Freeman, for close family relationships are not sufficient by themselves to establish privity with the original suit's party, or to bind a nonparty to that suit by the judgment entered therein. *See Leonhard v. United States,* 633 F.2d 599, 616 (2d Cir. 1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Smith v. Hood,* 396 F.2d 692, 693 (D.C.Cir.1968); *Sayre v. Crews,* 184 F.2d 723, 724 (5th Cir.1950); 1B Moore's Federal Practice, ¶ 0.411[11] (1984); 18 Wright, Miller, and Cooper, Federal Practice and Procedure § 4459 (1981). As summarized with respect to the present issue by the cited Wright treatise:

Each [family member] has an independent cause of action for personal injuries, free from claim preclusion, just as other multiple plaintiffs are presumed to own separate claims. None is bound by issue preclusion in an action for personal injuries, for the same reasons as apply to preclusion among unrelated parties.... [P]reclusion does not apply between litigation conducted by one family member in a personal capacity and litigation conducted by the same person as a representative of another family member.

Wright, Miller, and Cooper, *supra,* § 4459 at pp. 524–25.

The district court recognized these principles, but it felt that the Fifth Circuit's expanded notion of "virtual representation," *see* 18 Wright, Miller, and Cooper, *supra,* § 4457, permitted application of collateral estoppel to bar the present subsequent suit by the mother and siblings of Laura. Under this doctrine, "a person may be bound by a [prior] judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Aerojet General Corporation v. Askew,* 511 F.2d 710, 719 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975) (local governmental unit's subsequent suit precluded by prior judgment involving state agencies asserting defenses in close relationship to local unit).

In holding that the present "privy relationship" was sufficiently close to justify application of collateral estoppel, the district court cited *Hardy v. Johns-Manville Sales Corporation,* 681 F.2d 334 (5th Cir. 1982) and *Southwest Airlines Company v. Texas International Airlines, Inc.,* 546 F.2d 84 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977). In our view, for reasons to be explained, neither of these decisions support extension of the "virtual representation" theory of collateral estoppel so as to bar the litigation by a mother and siblings of their independent wrongful death claim of a family member, because of a judgment rendered against the husband-father in an earlier

action on his own individual claim for his own personal injuries, though stemming from the same accident.

## IV.

In *Southwest Airlines, supra,* we outlined generally the circumstances in which the relationship between the one who is party in the first, and the nonparty thereto sought to be bound or precluded by collateral estoppel in the second suit, may be sufficiently close as to justify preclusion:

First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party.... Second, a nonparty who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit....

*Southwest Airlines, supra,* 546 F.2d at 95 (citations omitted).

Since the mother and the siblings of the second suit obviously did not succeed in property to any interest of Freeman asserted in the first suit, and obviously did not control the original suit by Freeman,[3] the district court apparently concluded that the interests of the nonparty mother and siblings "were represented adequately" by Freeman in the first suit. However, both from *Southwest Airlines* itself and the succeeding decisions of this circuit, the con-

cept of "adequate representation" does not refer to apparently competent litigation of an issue in a prior suit by a party holding parallel interests;[4] rather, it refers to the concept of virtual representation, by which a nonparty may be bound because the party to the first suit "is so closely aligned with his [the nonparty's] interests as to be his virtual representative," *Aerojet General Corp., supra,* 511 F.2d at 719.

■ Further, as the jurisprudence of this circuit after *Southwest Airlines* makes plain, for parties to be so "closely aligned," or that the party's representation in the first suit "adequately" represents the nonparty's interests in the first suit so as to preclude a nonparty in subsequent litigation, requires more than a showing of parallel interests or, even, a use of the same attorney in both suits.

The most recent decision of this circuit on the issue, *Hardy v. Johns-Mansville Sales Corp., supra,* extensively discusses the applicable principles at 681 F.2d 338–41. In holding that collateral estoppel did not bar a nonparty despite its identity of interests with the party in the first suit, the court's scholarly opinion sets forth governing principles and parameters on the use of virtual representation to bar a nonparty from his day in court in the second suit. Preliminarily the court points out that, while collateral estoppel bars a party or his

---

3. "To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain review." *Hardy, supra,* 681 F.2d at 339 (citations omitted). Typical examples of control that result in collateral estoppel can be found in *Dudley v. Smith,* 504 F.2d 979 (5th Cir.1974) (president and sole shareholder controls his corporation) and *Astron Industrial Associates, Inc. v. Chrysler Motors Corporation,* 405 F.2d 958 (5th Cir.1968) (parent corporation controls subsidiary).

Thus, in *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), the United States was estopped from litigating the issue of a law's constitutionality where it had assumed virtually total control of an earlier lawsuit also seeking to resolve that question, even though it had not been a party to the earlier action.

4. In support of the adequate representation statement, *Southwest Airlines* cites and describes only virtual representation decisions, as follows, 546 F.2d at 95:

*Heckman v. United States,* 1912, 224 U.S. 413, 445–46, 32 S.Ct. 424, 434–35, 56 L.Ed. 820 (United States represents interests of American Indians); *Kerrison v. Stewart,* 1876, 93 U.S. [ (3 Otto) ] 155, 160, 23 L.Ed. 843, 845 (trustee represents interests of beneficiaries); *Aerojet-General Corp. v. Askew,* 5 Cir.1975, 511 F.2d 710 (state represents interests of a home-rule county); *Berman v. Denver Tramway Corp.,* 10 Cir.1952, 197 F.2d 946 (local government represents interests of the public).

The discussion in *Southwest Airlines* of this third, or adequate-representation exception, is limited to virtual representation decisions and principles. 546 F.2d at 98–100.

privy from relitigating the issue in a subsequent action, as to nonparties, "[t]he right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution." 681 F.2d at 338. The court notes that the nonparty collateral-estoppel exceptions enunciated by *Southwest Airlines* as arising from a sufficiently close relationship, were derived in rationale from the Restatement (Second) of Judgments §§ 30, 31, 34, 39–41 (1982), and that the obvious underlying rationale is that "in these instances the nonparty has in effect had his day in court." 681 F.2d at 339.

After pointing out that the nonparties were not shown in *Hardy* to have participated directly or indirectly in the first suit, 681 F.2d at 339, the court then concluded that the doctrine of "virtual representation" in the first suit could not apply under criteria enunciated in *Pollard v. Cockrell*, 578 F.2d 1002, 1008–09 (5th Cir.1978), whereby " '[v]irtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to nonparties who file a subsequent suit raising identical issues.' " 681 F.2d at 340. The *Hardy* opinion concluded its virtual representation discussion by stating that " 'privity is not established by the mere fact that persons may be interested in the same question or in proving the same set of facts.' " *Id.*

In *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir.1978), relied upon by *Hardy*, we rejected the contention that one group of massage parlor owners were bound by a judgment in a prior lawsuit by another group. As we stated in *Hardy*, *Pollard* rejected virtual representation "despite nearly identical pleadings filed by the groups and representation by common attorneys." 681 F.2d at 340. Pertinently to the present case—where the attorney in the present suit for the wrongful death damages of Laura's mother and siblings is the same as the attorney in Freeman's earlier suit for his own personal injuries—we concluded in *Pollard* that, for collateral estoppel purposes, "[r]epresentation by the same attorneys cannot furnish the requisite

alignment of interest." 578 F.2d at 1009. Although *Pollard* involved unrelated plaintiffs who had retained the same attorneys, we perceive no reason why a different principle should here apply because the attorney for the father-husband in his earlier unsuccessful suit happens to be the same attorney who now represents the mother and children in their independent action for wrongful death damages. Nor do we see any principled justification for holding that virtual representation applies because of the identity of attorneys here, whereas it would not if Freeman, on the one hand, and the mother and children, on the other, had retained different attorneys to file suit on their separate and independent causes of action.

## V.

■ We conclude, therefore, that the plaintiff Freeman's present action, insofar as in his capacity representing the wrongful death claims of Laura's mother and siblings, is not barred by the judgment based upon jury determination of non-negligence dismissing the earlier suit brought by Freeman individually to recover only for his own personal injuries sustained in the same accident. The mother and siblings were not parties to the first suit nor were they in privity with Freeman in his first suit, nor—within the contours of the limited exception of this court permitting nonparties to be bound because of their virtual representation in the first suit—were the mother and siblings so closely aligned in legal interest with Freeman as to justify a holding that their interests were adequately represented in the first suit. We are re-enforced in this conclusion because, so far as we can ascertain, no appellate decision has ever applied collateral estoppel in like circumstances, whereas its application has consistently been rejected in the few reported instances in which sought.

An underlying principle is that "[i]t is a violation of due process for a judgment [in a prior suit] to be binding on a litigant who was not a party or a privy and therefore

has never had an opportunity to be heard." *Parkland Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979). Collateral estoppel, with its purposes of protecting litigants from relitigating identical issues and promoting judicial economy by preventing needless litigation, *id.*, 439 U.S. at 326, 99 S.Ct. at 649, may indeed be appropriate where the litigant has earlier had a "full and fair opportunity for judicial resolution of the same issue", *id.*, 439 U.S. at 328, 99 S.Ct. at 650. Nevertheless, "[s]ome litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position." *Blonder-Tongue Laboratories, Inc. v. University of Ill. Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). The price of due process, thus, may include the possibility of conflicting adjudications in order to assure each litigant his or her day in court.

*Conclusion*

For the foregoing reasons, we AFFIRM the district court's judgment insofar as it dismisses the plaintiff Freeman's individual claim for wrongful death damages, but we REVERSE the district court's judgment insofar as it dismisses the claims asserted on behalf of the other wrongful death beneficiaries of Laura Freeman. Each party to bear its own costs.

AFFIRMED IN PART; REVERSED IN PART.