**BENSON AND FORD, INC., d/b/a Ford Gas Co., Plaintiff–Appellant,**

v.

**WANDA PETROLEUM CO., Etc., et al., Defendants–Appellees.**

No. 87–2333.

United States Court of Appeals, Fifth Circuit.

Dec. 16, 1987.

Jack N. Price, Austin, Tex., for plaintiff-appellant.

Bradley Westmoreland, Houston, Tex., for Ent. Prod. Co. and Wanda Petroleum Co., et al.

Before SNEED[*], REAVLEY and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

The district court dismissed defendants on the ground that plaintiff Benson and Ford's claims were precluded by a prior judgment in a case in which Benson and Ford was not a party. We reverse for the reason that privity did not exist between Benson and Ford and the plaintiff in the prior case.

## I.

The prior case was brought by Shelby L.P. Gas Co. against Wanda Petroleum Co. and others alleging various antitrust claims. Shelby alleged that the defendants retaliated against it because it refused to join a price fixing conspiracy in western Louisiana. The defendants split into two groups: the Enterprise group (Wanda Petroleum Company, d/b/a Gas TEC, Enterprise Products Co., Holicer Gas Co., Joe Havens, and Dan Duncan) and the Petrolane group (Petrolane Inc., and Petrolane

* Circuit Judge of the Ninth Circuit, sitting by designation.

Gas Services). The Petrolane group settled with Shelby but the Enterprise group elected to go to trial.

During the pendency of the *Shelby* litigation, Benson and Ford filed a separate suit against the Enterprise and Petrolane defendants alleging the same antitrust violations.

The Enterprise group won a jury verdict in the *Shelby* case. David Ford of Benson and Ford voluntarily appeared to testify as a witness for Shelby. The jury found against Shelby on all of its theories—price fixing, monopolization, attempt to monopolize, conspiracy to monopolize and tortious interference.

After the *Shelby* judgment, Enterprise moved for summary judgment against Ford. Enterprise argued that Ford, who had voluntarily testified, had the same lawyer and asserted the same claims arising from the same facts, was barred from relitigating the issues. The district court granted the motion and issued a Fed.R.Civ. P. 54(b) certificate.

## II.

■ A litigant has a due process right to a "full and fair opportunity to litigate an issue." *Hardy v. Johns–Manville Sales Corp.,* 681 F.2d 334, 338 (5th Cir.1982). Therefore, the conclusive effect of a prior judgment may only be invoked against a party or a privy. *Id.* The concept of "privity" is a legal conclusion, not a "judgmental process." *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 95 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977). A nonparty will be considered in privity, or sufficiently close to a party in the prior suit so as to justify preclusion, in three situations:

First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party.... Second, a nonparty who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit....

*Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 864 (5th Cir.1985) (quoting *Southwest Airlines,* 546 F.2d at 95). Enterprise argues that Ford is precluded by either the second or third situation.

### A.

■ "To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain review." *Hardy,* 681 F.2d at 339 (quoting *Restatement (Second) of Judgments* 39, comment c (1982)). Examples of the "control" necessary to preclude a nonparty are: the president and sole shareholder controls his company; a parent corporation controls its subsidiary; *Freeman,* 771 F.2d at 864 n. 3; a liability insurer assumes control of a defense; and the indemnitor defends an action against an indemnitee. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4451, at 430–31 (1981). However, "[l]esser measures of participation without control do not suffice. Thus it is not enough the nonparty supplied an attorney or is represented by the same law firm; helped to finance the litigation; appeared as an amicus curiae; testified as a witness; participated in consolidated pretrial proceedings; undertook some limited presentations to the court; or otherwise participated in a limited way. Even a nonparty who was 'heavily involved' may remain free from preclusion." *Id.* at 432–33 (footnotes omitted). It is essential that the nonparty have actual control. *See, e.g., Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Freeman,* 771 F.2d at 864 n. 3.

■ There is no evidence that Ford had control of the *Shelby* litigation. Enterprise argues that Ford had the same attorney, and urges the same facts on the same issues, that Ford was a witness at the *Shelby* trial and that there were meetings about their common interest which Ford and Shelby's president attended. That evidence, however, would not warrant a finding that Ford had actual control over the

*Shelby* case. Absent evidence that Ford directly exercised some actual control over Shelby's cause of action, *compare Montana*, 440 U.S. at 155, 99 S.Ct. at 974, the control theory cannot apply. We reject Enterprise's argument that because Ford's attorney was the same attorney who "controlled" the *Shelby* litigation, Ford controlled that case. A plaintiff cannot be precluded from bringing his own suit because he chose an attorney who participated in a prior suit. *Freeman*, 771 F.2d at 865, *Pollard v. Cockrell*, 578 F.2d 1002, 1009 (5th Cir.1978).

### B.

■ Enterprise also argues that Ford's suit is barred by reason of "adequate representation." The adequate representation concept does not pertain to the competence of the previous litigation. Instead, "it refers to the concept of virtual representation, by which a nonparty may be bound because the party to the first suit 'is so closely aligned with his [the nonparty's] interests as to be his virtual representative.'" *Freeman*, 771 F.2d at 864 (quoting *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)). For a nonparty to be so "closely aligned ... requires more than a showing of parallel interest or, even, a use of the same attorney in both suits." *Freeman*, 771 F.2d at 864. The question of virtual representation is one of fact and is to be kept within "strict confines." *Hardy*, 681 F.2d at 339. As explained in *Pollard*, 578 F.2d at 1008:

> Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.

*Freeman* provides a good example of how narrowly the virtual representation theory is applied. In that case, the plaintiff was injured and his daughter killed in a car crash. Freeman brought suit in state court for his own personal injury but lost on a finding of no defendant negligence. He then brought suit in federal court, on behalf of himself and as representative of his wife and three other minor children, for the wrongful death of his daughter from the same accident. We affirmed the use of collateral estoppel for Freeman's own claim but reversed for his wife's and children's claims. We held that, despite his own personal role in both cases, his use of the same attorney to pursue the same claims of negligence arising out of the same accident, Freeman was not the virtual representative to preclude the other family members' claims. *Id.* at 865. The holding was based on the ground that other family members had their own personal claims for wrongful death and were due their day in court.

The same legal reasoning, that the virtual representation concept demands the existence of an express or implied legal relationship, determined that a federal challenge to a massage parlor ordinance was not foreclosed by a prior unsuccessful state court challenge. *Pollard*, 578 F.2d at 1008. Despite the presence of the same attorneys and the same claims decided by state court, because the federal plaintiffs had no legal relationship to the state plaintiffs, there was no preclusion.

*Freeman* and *Pollard* control the decision in this case. Despite having the same attorney and the same claim from the same set of facts, there is no indication that Ford and Shelby had any expressed or implied legal relationship. The meetings which Ford and Shelby attended were simply discussions of the subject by the dealers in the area. There was no implication that Shelby was in any way accountable to Ford. Virtual representation does not apply.

Enterprise argues that two cases, *Southwest Airlines*, 546 F.2d 84, and *Cauefield v. Fidelity and Casualty Co. of New York*, 378 F.2d 876 (5th Cir.), *cert. denied*, 389 U.S. 1009, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967), support preclusion. Both cases are distinguishable. *Southwest Airlines* concerned the airline's attempt to remain at Dallas's Love Field. The City of Dallas had previously lost a federal suit to oust the airline from Love Field, which suit had

been predicated on a Dallas city ordinance. Other private carriers then filed suit in state court, using the same ordinance, to again attempt to oust Southwest. We held that the district court properly enjoined that state suit. *Id.* at 102–03. The only legal interest the private airlines had was the Dallas ordinance. *Id.* at 98. Our holding rested on the proposition that private parties cannot relitigate to enforce an ordinance after the public body fails in its attempt to enforce the same ordinance. By contrast, Ford does not seek to relitigate Shelby's rights. Although the alleged conspiracy was directed toward Shelby, Ford pursues only its own cause of action to which it has a legal right. *See Freeman,* 771 F.2d at 865 (each family member had separate and independent cause of action).

*Cauefield* was a Louisiana grave desecration case. The federal court action was stayed while a Louisiana state court case went forward. The plaintiffs lost in state court and we held that the district court properly dismissed the federal suit. Although the facts were similar to this case—same cause of action, same facts, same attorney, and use of federal plaintiffs—we see one crucial difference. The court pointed out that the federal case had been continued indefinitely until the state case could be resolved, and concluded that "[i]t thus appears that the [state court] case tacitly was intended to resolve all the numerous identical claims that the cemetery had been desecrated." *Id.* at 877. That tacit agreement was the implied legal relationship that is not present in this case.

### C.

■ Enterprise then argues its equities. It argues that Ford should have been required to join in the *Shelby* litigation; failing to do so, Ford should be barred from relitigating the issues. However, the general rule is "that a nonparty is not obliged to seize an available opportunity to intervene in pending litigation that presents question affecting the nonparty...." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4452, at 446 (1981); *Shell Oil Co. v. F.E.R.C.,* 707 F.2d

230, 235 (5th Cir.1983); *see also* Fed.R. Civ.P. 24 (Intervention). Ford was not obligated to join the *Shelby* case.

■ Enterprise says it would be unfair for Ford not to be precluded in this case, because Ford would have been entitled to use offensive collateral estoppel against Enterprise if Shelby had won the first suit. Even if we were free to modify our precedents, which we may not do, the fairness argument is not a strong one. First, Ford has a due process right to be heard. *Hardy,* 681 F.2d at 338. Enterprise, on the other hand, already has had an opportunity to fully litigate the issues. Because the due process rights are not the same, the two situations are not parallel. Second, we are not at all certain that Ford could have used a favorable *Shelby* verdict. The Supreme Court has said that offensive collateral estoppel should not be used "where a plaintiff could easily have joined in the earlier action...." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979). This circuit followed that restriction on offensive collateral estoppel in *Hauser v. Krupp Steel Producers, Inc.,* 761 F.2d 204, 207 (5th Cir.1985). Finally, in this case Enterprise might have avoided the two trials by moving to consolidate Ford's claim with Shelby's under Fed.R.Civ.P. 42.

### III.

Ford is not precluded from relitigating the same issues that were decided in the *Shelby* case. The district court erred in granting Enterprise's motion for summary judgment.

REVERSED and REMANDED.