**MARINE OFFICE OF AMERICA, CORPORATION, et al.,**

v.

**VULCAN MV, et al.**

**Civil Action Nos. 92–456, 92–3241.**

United States District Court, E.D. Louisiana.

April 8, 1996.

René S. Paysse, Paysse & Associates, New Orleans, LA, for plaintiffs.

Antonio J. Rodriguez, Rice Fowler, New Orleans, LA, for Vulcan MV.

Hyde Dunbar Healy, Lemle & Kelleher, New Orleans, LA, Jon Wesley Wise, Barry A. Brock, Antonio J. Rodriguez, Rice, Fowler, Kingsmill, Vance & Flint & Booth, New Orleans, LA, for Rondel Shipping Ltd.

Campbell Edington Wallace, Campbell E. Wallace, New Orleans, LA, for Asland, S.A., Cementos Asland, S.A.

Robert Burns Fisher, Jr., Derek Anthony Walker, L. Havard Scott, III, Mark Lewis Gundlach, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for Asland Cement Corporation, Inc., LaFarge Corporation.

Jeffrey Allen Raines, Alan Robert Sacks, Sacks & Raines, New Orleans, LA, for River Construction.

## ORDER

VANCE, District Judge.

This matter is before the Court on a "Motion for Preliminary Injunction" and a "Motion to Review Magistrate's Order" filed by defendant Rondel Shipping, Inc., and a motion to dismiss filed by Asland, S.A., and Cementos Asland, S.A., sought to be made defendants in this matter by Rondel Shipping, Inc. The "Motion for Preliminary Injunction" is DENIED on the merits and the other motions are DENIED as moot for the reasons that follow.

### I. HISTORY

Following a bench trial by the late Judge Okla Jones II, to whom this case was formerly allotted, Judge Jones issued an "Order and Reasons" in which he held Rondel Shipping, Inc. (hereinafter "Rondel") liable to plaintiff Asland Cement Corporation (hereinafter "ACC") for reasonable repair costs to its vessel, the HISPAMAR, but not for damages for the loss of use of the HISPAMAR sought

by ACC.[1] Judgment was entered in favor of ACC and against Rondel in personam and the M/V Vulcan in rem for $525,559.58 plus interest.[2]

In his Findings of Fact, Judge Jones noted that at the time of the collision, ACC was a Delaware corporation majority owned by a Spanish corporation, which was in turn owned by Asland S.A., a Spanish multinational holding corporation. Asland's subsidiaries were completely independent, with their own accounts and management. Foreign subsidiaries such as ACC "chose their own banks, management and external auditors." The comptroller/treasurer of ACC testified that ACC conducted and controlled it own affairs and that its funds were separately held and never commingled with Asland's. Further, she testified that all corporate formalities were observed.[3]

At trial ACC claimed damages as a result of the loss of a charter agreement with another Asland subsidiary, the identity of which was to be determined by Asland.[4] Judge Jones rejected this allegation, finding that it was "unbelievable that the [alleged] $5,000–a–day, year-long contract was not reduced to writing."[5] Additionally, because the actual identity of the lessee was not specified, no charter contract was formed because of lack of an essential term.[6]

In reaching this decision, Judge Jones found that "[m]any of the corporations affiliated with ACC had common corporate officers, had shared substantial identity of ownership, and pursued similar business functions."[7] However, even though he found that "the relationship between ACC and related companies is close," Judge Jones "declin[ed] to consider the companies as a single business entity because the determination is not necessary to resolve the issues in this case,"[8] relying instead on the findings set forth above.

Rondel now seeks a preliminary injunction against Asland, S.A. and Cementos Asland, S.A. (hereinafter "Cementos"), another corporate affiliate of ACC, to prevent them from pursuing a state-court action against Rondel for damages for loss of a contract charter with ACC.[9] Rondel argues that the Court should preliminarily enjoin Asland and Cementos under the exception to the Anti–Injunction Statute, 28 U.S.C. § 2283, which allows a federal court to enjoin a state-court proceeding "to protect or effectuate its judgments."[10] Rondel maintains that an injunction is proper because, pursuant to the principle of res judicata, the issue of whether a charter contract existed has been litigated and decided and, further, Asland and Cementos are in privity with ACC.

In its motion to review the Magistrate Judge's order, Rondel submits that the Magistrate Judge erred in refusing to allow it to name Asland and Cementos as defendants in order that the Court may preliminarily enjoin them from proceeding in state court.

Asland and Cementos' motion to dismiss dovetails in part with ACC's opposition to the preliminary injunction and its opposition to the motion to review the magistrate's order. ACC, Asland and Cementos argue that the preliminary injunction is improper because Asland and Cementos are not in privity with ACC. In further support of its motion to dismiss, Asland and Cementos contend that the Anti–Injunction Statute should be con-

---

1. R.Doc. 235. The litigation arose out of a collision between Rondel's vessel, the M/V Vulcan, and the HISPAMAR, for which Rondel admitted fault. *Id.* at 1.

2. R.Doc. 250.

3. The foregoing is taken from Judge Jones' Findings of Fact, R.Doc. 250, pp. 10–11.

4. *Id.* at 13.

5. *Id.* at 22.

6. *Id.*

7. *Id.,* n. 5.

8. *Id.*

9. A copy of this lawsuit is attached as Exh. C to Rondel's Motion for Preliminary Injunction.

10. The statute provides in full:

    A court of the United States may not grant an injunction to stay proceedings in a State court except as previously authorized by Act of Congress, or where necessary in aid of its jurisdiction, or *to protect or effectuate its judgments.* (Emphasis added.)

strued narrowly and that the issues they raise in their state-court lawsuit have never been litigated in the lawsuit tried in federal court.

## II. DISCUSSION

■ The Supreme Court has described the relitigation exception of the Anti–Injunction Act as

> designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well recognized concepts of *res judicata* and collateral estoppel.

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988). *Compare Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 720–21 (5th Cir. 1990) (upholding injunction against redetermination of choice-of-law question in state court action), *with Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 499–502 (5th Cir.1988) (refusing to apply relitigation exception because res judicata and collateral estoppel were inapplicable).

■ Federal law governs the res judicata effect of a prior federal court judgment. *E.g., Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1124 (5th Cir.1987). In order to establish *res judicata,* four elements are necessary. First, "the parties must be identical in both suits." *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir.1983) (*en banc*) (quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir.1979)). Additionally,

> the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.

*Id.* Res judicata "bars the parties to a prior proceeding or those in privity with them from relitigating the same claims that were subject to a final judgment on the merits by a court of competent jurisdiction." *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287 (5th Cir.1989). *See also Quintero*, 914 F.2d at 721.

In the instant case, there is no question that a judgment was rendered by a court of competent jurisdiction and that there was a final judgment on the merits. The remaining issues are whether the plaintiffs in the state and federal lawsuits are in privity with each other and whether the two cases involve the same cause of action.

■ Analyzing the privity issue first, the Court notes that the Fifth Circuit has established the three situations in which a party "will be considered in privity, or sufficiently close to a party in the prior suit so as to justify preclusion...." *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir.1987). They are the following:

> First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party.... Second, a nonparty who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a nonparty whose interests were adequately represented by a party in the original suit....

*Id.* quoting *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985) (quoting *Southwest Airlines Co. v. Texas International Airlines*, 546 F.2d 84, 95 (5th Cir.1977)).

■ As to the first fact situation, Rondel only argues that at the time this suit was filed, ACC was no longer a functioning entity, that its president had departed for another job and that ACC had sold its assets—including the HISPAMAR—and terminated its employees. However, Rondel presents no evidence and points to no evidence in the record to indicate that Asland or Cementos succeeded in any way or at any time to ACC's interest in its claims. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 4462 (discussing effect of time and type of transfer on *res judicata* issues). Thus, Rondel fails to satisfy the first test for privity.

As to the second situation, the Fifth Circuit has explained when a party may be found to have had "control" of the original suit as follows:

To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain review.

*Benson and Ford,* 833 F.2d at 1174 (quoting *Hardy v. Johns–Manville Sales Corp.,* 681 F.2d 334, 339 (5th Cir.1982)) (quoting *Restatement (Second) of Judgments* 39, comment c (1982)). Examples include a president and shareholder controlling his or her company, a parent corporation controlling its subsidiary, a liability insurer assuming control of a defense or an indemnitor defending an action against an indemnitee. *Benson and Ford,* 833 F.2d at 1174.

However, "[l]esser measures of participation without control do not suffice. Thus it is not enough that the nonparty supplied an attorney or is represented by the same law firm; helped to finance the litigation; appeared as an amicus curiae; testified as a witness; participated in consolidated pretrial proceedings; undertook some limited presentations to the court; or otherwise participated in a limited way. Even a nonparty who was 'heavily involved' may remain free from preclusion." It is essential that the nonparty have actual control.

*Id.* (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4451, at 432–33).

No case law holds that the existence of a parent-subsidiary relationship, without more, constitutes control that would allow for imposition of res judicata. Such relationships are treated just as those between any stockholder and corporation. *See generally* 1B J. Moore, J.D. Lucas and A. Shure, *Moore's Federal Practice,* ¶ 0.411[10]; Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 4460 at 533–35. *See also Johnson & Johnson v. Coopervision, Inc.,* 720 F.Supp. 1116, 1123 (D.Del.1989) (*citing Moore's Federal Practice* ). At least one Fifth Circuit case has upheld a finding that a parent was in privity with its wholly-owned subsidiary. *Astron Industrial Associates, Inc. v. Chrysler Motors Corp.,* 405 F.2d 958, 961 (5th Cir.1968). However, the record in that case indicated complete operational control of the subsidiary by the parent as sole stockholder. *Id.* The board of directors of the parent even authorized the prior lawsuit by the subsidiary and hired its attorney. *Id.* at 959–60.

■ The record in the instant case does not support such control. Although there is evidence that Asland was the majority owner of ACC, Rondel has failed to show that either Asland or Cementos controlled the litigation in this court as to the legal theories advanced or exerted control over the decision to obtain review of Judge Jones' decision.[11] Rondel's mere reliance on allegations in Asland and Cementos' state-court petition as to the interrelationship of ACC, Asland and Cementos also does not prove control. These allegations only show what Judge Jones found: "close alignment." Neither does the fact that the director of finance for Asland, Jaime Alabart, testified for ACC and negotiated on behalf of Cementos with ACC show control. Testimony as a witness is insufficient to show privity. *Benson and Ford,* 833 F.2d at 1174. Alabart's position as negotiator on behalf of Cementos with ACC actually is indicative of the separate nature of ACC and its other affiliates, not control of ACC by Asland.

■ Rondel next maintains that Alabart's testimony proves that the loss of market claim for Asland and/or Cementos was being asserted through ACC. This hypothesis fails for two reasons. First, Rondel takes this testimony out of context. The record shows that Alabart's testimony was meant to support ACC's attempt to prove that a market existed for the alleged charter agreement and, therefore, the charter agreement existed; the testimony was not intended to advance a claim on behalf of Asland or Cementos.[12] Second, both Judge Jones and Rondel's counsel understood that *only* ACC was asserting claims in the federal suit. This finding is supported by the colloquy in

---

**11.** ACC filed a notice of appeal of the district court's decision. R.Doc. 251.

**12.** *See* Exh. H., pp. 37–39, attached to Rondel's memorandum in support of its Motion for Preliminary Injunction.

the record between counsel for the parties and the Court at the beginning of the trial when ACC sought reconsideration of the Court's order excluding certain expert testimony. *See* Vol. 1 of the transcript of trial, pp. 3–11. The testimony related to an alleged loss by a different company in the Asland group in response to a defense raised by Rondel that if there were no loss there could be no contract. *Id.* at 5. In affirming his prior decision, Judge Jones questioned the relevance of the report to the issue of whether ACC had a charter agreement. *Id.* at 10–11. Additionally, counsel for Rondel argued that the evidence was irrelevant because ACC was the only claimant in the suit and the issue of damages suffered by affiliated companies was irrelevant:

> Their claim here is for a company that operated in New Orleans called Asland Cement Corporation [ACC], they are the litigant, they are making a claim that there was some charter hire with their parent company, or an oral charter agreement with their charter company as a result of a breach of which they claim was caused by this collision. That's really the end of the inquiry, if the Court finds that there is no charter party, then all of this business of what their parent company or what some affiliate company could have made in Spain is totally irrelevant and that's why it should be excluded.

*Id.* at 7–8.

Finally, the Court rejects Rondel's contention that the various contested issues of fact and law in the Pre–Trial Order show control by Asland or Cementos. These issues relate to the existence of a charter agreement and defenses raised by Rondel to that allegation.

In sum, the only evidence in the record as to control—which, as explained above, Judge Jones declined to rely on in his ruling that no charter agreement existed—was that the parties were closely aligned but that ACC was completely independent from Asland.[13] This is insufficient to establish control for purposes of privity under Fifth Circuit law.

The final situation where privity arises is where "adequate representation" binds a nonparty. This concept, also known as "virtual representation," demands "the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Benson and Ford,* 833 F.2d at 1175 (*quoting Pollard v. Cockrell,* 578 F.2d 1002, 1008 (5th Cir. 1978)). More than just a parallel interest is necessary to show "adequate representation," and this doctrine is strictly construed. *Benson and Ford,* 833 F.2d at 1175.

Fifth Circuit cases which have analyzed this doctrine are instructive as to its restrictive scope. For example, in *Meza v. General Battery Corporation,* 908 F.2d 1262, 1264 (5th Cir.1990), a union had filed a lawsuit against certain defendants claiming that they had singled out three named plaintiffs, not including Meza, for discrimination by denying them occupational disability benefits. Summary judgment was granted to defendants. *Id.* Without any knowledge of the union's lawsuit, Meza filed a lawsuit against the same defendants seeking benefits which included occupational disability benefits. *Id.* The trial court dismissed his claim for disability benefits, finding that the union's prior suit was res judicata with respect to this claim. *Id.* at 1265. The court of appeals reversed. *Id.* Addressing the issue of "virtual representation," the Fifth Circuit found that there was no express or implied legal relationship between Meza and the union because he was not a member when suit was brought and did not consent to the union's representation. *Id.* at 1272. Additionally, the union had no contractual duty or statutory obligation to represent Meza. *Id.* The panel then stated:

> Moreover, even if the UAW volunteered to represent Meza, it is doubtful whether the Union owed him a duty of fair representation. In light of the foregoing, we cannot see how the UAW would be "accountable" to Meza in any way. Therefore, we con-

---

**13.** *See* Exh. D, pp. 10–11 and 21–22, n. 5, attached to Rondel's memorandum in support of its Motion for Preliminary Injunction.

**374**

clude that the doctrine of virtual representation has no application in this case. *Id.* at 1272–73.

In *Clark v. Amoco Production Co.,* 794 F.2d 967, 973–74 (5th Cir.1986), the Fifth Circuit rejected an argument based on "virtual representation" when the named plaintiffs in a subsequent lawsuit sued as administrators of an estate on behalf of the estate's beneficiaries as opposed to their individual capacities in which the first suit was brought.

In *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 97, n. 48 (5th Cir.1977), the Fifth Circuit referred to *Astron Indus. Associates* as an example of virtual representation involving a parent corporation and its wholly-owned subsidiary. As discussed above, that case involved complete operational control of the subsidiary by the parent. Similarly, in *Robinson v. National Cash Register Company,* 808 F.2d 1119, 1121, 1124 (5th Cir.1987), the Fifth Circuit addressed the issue of whether a claim by individuals and their closely-held corporation was barred by res judicata because a prior suit brought by the individuals had resulted in a judgment against them even though the corporation had not been involved in the first suit. The court of appeals upheld the district court's findings that the corporation was the "alter ego" of the individuals based on their controlling stock ownership, board membership and positions as operating officers of the corporation. *Id.* at 1124. Hence, the individuals virtually represented the corporation, and the test for res judicata was satisfied. *Id.* at 1124–25.

In the instant case, Rondel has not pointed to any evidence in the record such as existed in *Astron Indus. Associates* or *Robinson* of

any facts that support an express or implied legal relationship between ACC, Asland and Cementos such that ACC was accountable to Asland and Cementos for the claims made by ACC. Again, the only evidence is close alignment, which is not enough considering that "adequate representation" must be narrowly construed. Thus, the Court refuses to find that Asland and Cementos were adequately represented at trial.

In conclusion, due to the lack of evidence as to privity between ACC, Asland and Cementos, the Court holds that Judge Jones' finding that ACC did not enter into a charter agreement has no *res judicata* effect on the state-court action that Asland and Cementos are prosecuting.[14] Because *res judicata* is inapplicable, the Court refuses to enter a preliminary injunction against Asland and/or Cementos. For this reason, the Court also denies as moot Rondel's motion to review the Magistrate Judge's decision denying Rondel's motion to add Asland and Cementos as parties.[15] For the same reason, the Court denies Asland and Cementos' motion to dismiss as moot. Accordingly,

IT IS ORDERED that Rondel's Motion for Preliminary Injunction is DENIED.

IT IS FURTHER ORDERED that Rondel's Motion to Review Magistrate's Order and Asland and Cementos' Motion to Dismiss are DENIED as MOOT.

---

**14.** With this finding of lack of privity, it is unnecessary for the Court to address the remaining element of *res judicata, i.e.,* whether the same issue was litigated in this Court as is being litigated in state court.

The Court also notes that, although Rondel proceeds only on the theory of res judicata, even were it to rely on the doctrine of collateral estoppel, its contention would fail. With collateral estoppel, like res judicata, a judgment is preclusive in a second suit only *against* a party who was a party or its privy in the action in which the judgment was rendered. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327, n. 7, 99

S.Ct. 645, 649, n. 7, 58 L.Ed.2d 552 (1979); *Griffin v. Burns,* 570 F.2d 1065 (5th Cir.1978) (collateral estoppel does not preclude suit by parties who were not parties or privies to unsuccessful party in first action); *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860 (5th Cir. 1985) (judgment for defendant did not collaterally estop new plaintiff not party or privy of unsuccessful plaintiff in first suit). *See generally* 1B *Moore's Federal Practice* ¶¶ 0.411[1] and 0.441[3].

**15.** As noted above, Rondel's desire to add these parties as defendants arose purely from its request for a preliminary injunction.