**MITSUBISHI CORPORATION**

v.

**EAGLE TRANSPORT, LTD.**

**Civ. A. No. B–86–0160–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

June 26, 1989.

E.V. Green, Houston, Tex., for plaintiff.

George W. Renaudin, Simon, Peragine, Smith & Redfearn, New Orleans, La., Thomas B. Greene, III, Crain, Caton, James & Womble, Houston, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiff Mitsubishi was the cargo owner on the THOMAS K when the ship sank in international waters off the coast of Japan on February 1, 1984, with a captain plus a crew of fourteen men. The ship had taken on plaintiff's cargo of scrap metal in Port Canaveral, Florida, on December 10, 1983. On December 30, 1983, the ship had embarked on a voyage which would take it through the Panama Canal, into the Pacific, and to within thirteen miles of landfall in Japan before sinking.

After the sinking, crewmen and survivors of crewmen filed an action in this court for personal injury claims. An eight-day trial of the fourteen personal injury claims was held in the case styled *Psarianos v. Standard Marine*, Civil Action B–84–298–CA. At the outset of jury argument, the shipowner conceded liability based upon respondeat superior principles due to the negligence of the master in (1) failing to permit the crew to abandon ship when they could safely do so, (2) continuing to the end to instruct them to remain at their posts, and (3) even ordering them to remove their life vests.

During deliberations, the jury found in interrogatory number one that fifty per cent (50%) of the "negligence" that proximately caused the "occurrence in question" was attributable to the vessel owner, Eagle Transport Limited, Inc. (Eagle). In addition, the jury found in interrogatory number four that Eagle did not justifiably believe it was "in compliance with American Bureau of Shipping (ABS) regulations and requirements" when the THOMAS K set sail from Port Arthur, Texas. Although the jury also found punitive damages, these awards were later set aside by the court without objection by the parties.

The plaintiff Mitsubishi, asserting the applicability of offensive collateral estoppel, now petitions the court to grant summary judgment for its cargo claim against Eagle. Eagle contends, however, that offensive collateral estoppel is inapplicable because, among other reasons, the issues to be decided in a case involving cargo claims are different than those decided by the jury in the *Psarianos* case.

The law for cargo claims is set forth in 46 U.S.C.App. § 1304. For the purposes of this motion, liability may be imposed against the cargo carrier for the ship only if there was a "want of due diligence on the part of the carrier to make the ship seaworthy." 46 U.S.C.App. § 1304(1). In addition, a defense of liability exists for loss or damages arising or resulting from an "[a]ct, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship." 46 U.S.C.App. § 1304(2)(a).

■ Federal common law permits the use of offensive collateral estoppel upon showing of three necessary criteria;

1. that the issue at stake be *identical* to the one involved in prior litigation;

2. that the issue has been actually litigated in the prior litigation; and

3. that the determination of the issue in the prior litigation has been a *critical and necessary part* of the judgment in that earlier action.

*Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 862 (5th Cir.1985) (emphasis added); *see also Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■ Mitsubishi asserts that the only issue in both cases is that of the unseaworthiness of the vessel; thus, the issues are "identical." However, the court finds that unseaworthiness is not and was not the issue in either action.

In the first interrogatory, the· *Psarianos* jury was merely asked to determine Eagle's percentage of negligence for the "occurrence in question." This "occurrence in question" dealt with the loss of life of the seamen, and not the sinking of the shredded scrap metal. As pointed out, Eagle conceded negligence for the "occurrence in question" based upon respondeat superior principles, and not unseaworthiness.

In the fourth interrogatory, the jury acted merely in an advisory capacity to the court on an indemnification issue. Al-

though the jury found that Eagle did not justifiably believe it was "in compliance with American Bureau of Shipping Regulations and requirements" when the THOMAS K set sail from Port Arthur, Texas, this finding was not a finding of unseaworthiness; a ship may still be seaworthy even though not in compliance with ABS's rules, such as ABS's rule on mandatory drydocking. In addition, the jury's finding on noncompliance with ABS's rules was advisory only and went only to the issue of indemnity between ABS and Eagle. Thus, the interrogatory was not a "critical and necessary part" of the judgment as required by *Parklane*.

Assuming arguendo the jury had found unseaworthiness in *Psarianos*, this finding would still be inadequate to establish liability against the cargo carrier. The United States Code, 46 U.S.C.App. § 1304(1), requires a want of *due diligence* to make the ship seaworthy before imposing liability against the cargo carrier. In addition, this section of the code will not impose liability against the carrier for the actions of the captain. Neither of these issues were submitted to the jury. Accordingly, the court finds that the issues are not identical for the purposes of asserting offensive collateral estoppel.

Besides a finding of lack of identical issues, the court seriously questions whether Mitsubishi even has a valid claim. After presiding over the eight-day trial of this case, and despite the *Psarianos* plaintiffs' valiant efforts to prove the contrary, the court is of the opinion that the THOMAS K was seaworthy when it left port. Unless Mitsubishi has some additional evidence which shows the unseaworthiness of the vessel and Eagle's lack of due diligence, the court is prepared to rule in this case by written motions.

Accordingly, plaintiff's motion for summary judgment is DENIED.