## IN RE AIR CRASH AT DETROIT METROPOLITAN AIRPORT, DETROIT, MICHIGAN, ON AUGUST 16, 1987.

**Gerald L. DODDS, Executor of the Estate of David J. Dodds, Deceased, Plaintiff,**

v.

**McDONNELL DOUGLAS CORPORATION, Texas Instruments, Inc., U.S.A., National Car Rental Systems, Inc., and County of Wayne, Michigan, Defendants.**

MDL No. 742.
No. 90–72192.

United States District Court,
E.D. Michigan,
Southern Division.

July 7, 1997.

Alfred E. Hughes, Dubuque, IA, for Gerald L. Dodds.

Douglas E. Winter, Washington, DC, for Defendant McDonnell Douglas.

Michael L. Updike, Farmington Hill, MI, for Defendant Texas Instrument.

Carl Greenberg, Short Hills, NJ, Fred C. Begy, III, Chicago, IL, Mark A. Dombroff, Washington, DC, Paul D. Groak, Washington, DC, for Defendant Natl. Car Rental.

## ORDER

JULIAN ABELE COOK, Jr., District Judge.

On December 9, 1996, one of the Defendants, National Car Rental Systems, Inc. (NCR), filed a motion in which it sought to obtain the entry of a summary judgment against the Plaintiff, Gerald L. Dodds, Executor of the Estate of David J. Dodds, Deceased, pursuant to Fed.R.Civ.P. 56. Two months later, another Defendant, County of Wayne, Michigan (Wayne County), filed a separate motion for summary judgment against the Plaintiff.[1] The Plaintiff opposes both motions.

After holding a hearing on April 8, 1997, the Court took the issues in controversy under advisement. For the reasons that have been set forth below, both motions are granted and this action is dismissed in its entirety.

---

1. On December 26, 1996. Wayne County formally joined NCR in seeking the entry of a summary judgment against the Plaintiff.

## I.

This litigation arises from the tragic crash of Northwest Flight 255 on August 16, 1987 at the Detroit Metropolitan Airport. This air crash has been the subject of extensive litigation, which has been noted by the Court in *In re Air Crash at Detroit Metropolitan Airport, Detroit, Michigan on August 16, 1987*, 791 F.Supp. 1204 (E.D.Mich.1992), *aff'd* 86 F.3d 498 (6th Cir.1996) (*"In re Air Crash at Detroit"*). The instant case represents the final piece of litigation to be resolved by the Court as a result of this tragedy.

Prior to the commencement of this action,[2] the Court maintained a substantial number of multi-district litigation (MDL) issues on its docket involving the air crash. *See, In re Air Crash at Detroit*, 791 F.Supp. at 1208, n. 4 (noting that over one hundred and fifty (150) cases had been filed as a result of the air crash). The MDL ultimately resulted in a contest of claims solely between McDonnell Douglas Corporation (MDC) and Northwest Airlines (Northwest), which in turn became the subject of *In re Air Crash at Detroit*.[3] For over a year, the Court conducted a joint liability trial involving the claims of MDC and Northwest. The trial concluded with a jury finding that Northwest was responsible for the accident. (*See*, NCR Appendix, Exhibit F, Verdict Form). The jury also found that the flight crew had engaged in willful and wanton misconduct. (*Id.*, at 3).

Shortly after the jury verdict, MDC filed a motion for summary judgment against the Plaintiff in this case.[4] In its motion, MDC advanced the argument that the Plaintiff's claims were barred on the grounds of collateral estoppel, res judicata or the law of the case because of the jury's verdict in the joint liability trial. However, prior to rendering a decision on the merits of the motion, the

Court accepted a proposal between the parties, in which MDC and the Plaintiff agreed that their respective claims would be stayed pending the outcome of an appeal by Northwest to the Sixth Circuit Court of Appeals (Sixth Circuit).[5] (*See*, NCR Appendix, Exhibit H, Stipulation and Order to Stay With Consent to Be Bound). Under the terms of the stipulation, the parties agreed that MDC would be without liability to the Plaintiff if the Sixth Circuit dismissed the appeal or affirmed the judgment against Northwest.

On June 6, 1996, the Sixth Circuit rendered a unanimous decision which, in essence, rejected all of Northwest's claims of appeal and affirmed the judgment of this Court. As a result of this decision, the parties' stipulation only left NCR and Wayne County as Defendants in the case at bar.[6] In the instant motion, NCR asserts that the Plaintiff's claims are barred under the doctrine of collateral estoppel. Wayne County, on the other hand, seeks a summary judgment on the basis of governmental immunity.

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, a summary judgment is to be entered if the moving party demonstrates the absence of all genuine issues of material fact, and if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In making this evaluation, the court is authorized to examine any pleadings, depositions, answers to interroga-

2. On July 26, 1990, Gerald L. Dodds, in his capacity as the Executor of the Estate of David J. Dodds, brought this wrongful death lawsuit against the Defendants. Dodds was the First Officer of the 255 flight crew.

3. A detailed account of the procedural history in the MDL case has been set forth in *In re Air Crash at Detroit*, 791 F.Supp. at 1208–1210.

4. The motion also applied to another piece of litigation involving the estate of John Richard

Maus, the captain of the 255 flight (to wit, *Maus v. McDonnell Douglas Corp. et al.*, Civil Case No. 89–CV–72263–DT).

5. The Plaintiff in *Dodds* entered into a similar stipulation with another Defendant, Texas Instrument, Incorporated. (*See*, NCR Appendix, Exhibit I, Stipulation and Consent to be Bound).

6. The Court entered an order of dismissal of the Plaintiff's claims against MDC and Texas Instruments, Inc., on April 21, 1997.

tories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company,* 948 F.2d 283 (6th Cir.1991). If this burden is met by the moving party, the failure of the non-moving party to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . ." will mandate the entry of summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### A. *Collateral Estoppel*

Under federal law,[7] the doctrine of collateral estoppel precludes the relitigation of an issue that has been previously adjudicated if (1) the issue under scrutiny in a prior litigation and the case at bar is identical, (2) there was a final decision or judgment on the merits of the issue; and (3) the party against whom the estoppel is asserted was a party, or in privity with a party, to the previous suit. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Olchowik v. Sheet Metal Workers' Int'l Ass'n,* 875 F.2d 555, 557 (6th Cir. 1989).

In its motion, NCR asserts that the claims of the Plaintiff are barred by the finding of the jury that the flight crew engaged in willful and wanton misconduct. Thus, it argues that the Plaintiff is collaterally estopped from bringing the instant action because the decedent was "in privity" with his employer, Northwest, who was found to be responsible for the air crash. NCR advances this argument even though the Plaintiff was not a party to the joint liability trial between MDC and Northwest.

#### 1. *Whether Privity Exists Between Northwest and the Plaintiff*

The Sixth Circuit has found a nonparty to be "in privity, or sufficiently close to a party

in the prior suit so as to justify preclusion," in the following three situations:

> First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party. . . . Second, a non-party who controlled the original suit will be bound by the resulting judgment. . . . Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.

*Becherer v. Merrill Lynch, Pierce, Fenner & Smith,* 43 F.3d 1054, 1069–70 (6th Cir.1995), *cert. denied sub. nom. Adams v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* — U.S. ——, 116 S.Ct. 296, 133 L.Ed.2d 203 (1995) (quoting *Southwest Airlines Co. v. Texas Int'l Airlines,* 546 F.2d 84, 95 (5th Cir.1977)).

The first two situations do not apply here. With regard to the third situation, the Sixth Circuit adopted the view of the Fifth Circuit Court of Appeals that the doctrine of adequate representation, or virtual representation,

> requires more than a showing of parallel interest or, even, a use of the same attorney in both suits. . . . The question of virtual representation is one of fact and is to be kept within "strict confines." . . . Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.

*Becherer,* 43 F.3d at 1070 (quoting *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1175 (5th Cir.1987)).

Even though the Fifth Circuit emphasized the need to keep the doctrine within strict confines, the Sixth Circuit nevertheless noted that:

> Some cases may present substantial elements of several different grounds of non-party preclusion without clearly justifying application of any one ground. Careful application of the virtual representation label may provide a convenient means of aggregating these separate elements in special circumstances that make relitigation especially unattractive. . . . Close

---

7. This Court has previously determined that federal law governs the collateral estoppel or preclusive effects of the judgment in the MDL case.

*See, In re Air Crash Detroit,* 791 F.Supp. at 1212–1213.

nonlitigating relationships with a party, participation, apparent acquiescence, and perhaps deliberate maneuvering to avoid the effects of the first action are among the factors to be weighed.

*Id.*, 43 F.3d at 1070 (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4457 (1981)).

The Sixth Circuit in *Becherer* ultimately reversed the finding of privity by the district court, noting that the lower court had adopted an "impermissibly broad definition of adequate or 'virtual' representation."[8] *Id.*, 43 F.3d at 1071. The court remanded the issue to the district court for factual findings on whether the doctrine would apply under its narrow interpretation of virtual representation. *Becherer*, therefore, provides a legal foundation upon which to determine the applicability of the doctrine of virtual representation to the case at bar.

To further aid the Court in determining whether privity exists for collateral estoppel purposes, NCR cites *Lewis v. County of Sacramento*, 218 Cal.App.3d 214, 266 Cal.Rptr. 678 (1990). In *Lewis*, a Federal Aviation Administration (FAA) safety inspector (to wit, Theron Lewis) filed an action in a state court against the County of Sacramento following the crash of its helicopter that he had been piloting. Thereafter, the County sued Lewis' employer, the United States of America (United States), in a federal court to recover worker compensation benefits that had been paid to a County employee who was also injured in the crash. After conducting a lengthy bench trial, the federal court found that (1) Lewis had acted within the scope of his employment at the time of the crash and (2) his negligence was the sole cause of the helicopter crash. Lewis, who had not been a party to the federal suit, continued to pursue his state court action. However, the trial court ultimately decided that he was collaterally estopped from maintaining his state action due to the findings in the federal court action.

In affirming the entry of summary judgment by the lower court, the California Court of Appeals reasoned:

> The ultimate issue in this action and in the federal action was the cause of the helicopter crash. The only theory asserted against the United States in the federal suit was its vicarious liability under the doctrine of respondeat superior for the acts of its employee, plaintiff. The United States vigorously disputed this liability. Plaintiff testified extensively on behalf of the United States in the federal suit. Under these circumstances, there is an "identification of interest" of the United States with plaintiff "as to represent the same legal rights;" a fortiori, the relationship between the two is "sufficiently close" to justify the collateral estoppel of plaintiff. . . .

*Lewis*, 218 Cal.App.3d at 218, 266 Cal.Rptr. at 680 (citations omitted).

The California Court of Appeals also noted that the finding of privity between Lewis and his employer by the trial court had satisfied due process requirements. Relying upon California case law, the court stated:

> In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. . . . The "reasonable expectation" requirement is satisfied if the party to be estopped had a proprietary interest in and control of the prior action, or if the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for the party to be estopped. . . . Furthermore, due process requires that the party to be estopped must have had a fair opportunity to pursue his claim the first time.

*Id.* (citations omitted). The *Lewis* court concluded that the relationship between Lewis and his employer was sufficiently close to justify collateral estoppel because there was (1) an identity of interest based on respondeat superior, (2) an adequate representation

---

8. The district court found that the relationship between the plaintiffs in action A (the original action) and action B (the subsequent action) was "sufficiently close", insofar as both groups of plaintiffs were investors in the same business and had like interest in the case (i.e., both groups were identically situated and both raise the same causes of action). *Becherer*, 43 F.3d at 1070.

by the United States of Lewis' interest,[9] (3) a reasonable expectation that the federal court decision would be binding,[10] and (4) a full and fair opportunity for Lewis to litigate his claims.[11]

 As in *Lewis*, NCR maintains that an identity of interest existed between Northwest and the Plaintiff as it relates to the issues in this case on the basis of the respondeat superior doctrine. NCR also submits that the Plaintiff's interests were adequately represented by Northwest during the joint liability trial.[12] Furthermore, NCR asserts that the Plaintiff could have intervened, or attempted to intervene, in the joint liability trial but elected not to do so.

In his reply, the Plaintiff submits that (1) the jury did not make a specific finding about whether the decedent had engaged in willful and wanton misconduct, (2) his interests were not adequately represented in the joint liability trial because Northwest only sought to exonerate itself during the trial, (3) *Lewis* is factually distinguishable from the case at bar, (4) the issue to be litigated in this action involves the comparative fault or negligence, if any, of the parties, and (5) he did not have a full and fair opportunity to litigate the issue of comparative fault in the joint liability trial. After careful consideration, the Court must reject all of the Plaintiff's arguments. *Lewis*, while not controlling, is instructive on the issue of privity in the employer-employee context.

 In this case, there is an identity of interests between Northwest and the decedent based on the doctrine of respondeat superior. Neither party seriously disputes the fact that Northwest was subject to vicarious liability for the acts of the 255 flight crew, its employees. In the joint liability trial, Northwest mounted a vigorous defense against MDC's allegations that it and/or its flight crew were responsible for the accident.[13] Despite the Plaintiff's characterization of the issue, any finding pertaining to the comparative fault of the parties would necessarily entail a determination on the cause of the air crash. The jury found Northwest to be totally at fault for the crash. The Plaintiff's attempt to relitigate the issue of fault must be rejected since the ultimate issue in the joint liability trial and the instant litigation are the same (i.e., the cause of the air crash).[14]

Northwest vigorously disputed its liability, including that of the flight crew of which the decedent was a member, in the underlying action.[15] Hence, it can be reasonably said

9. In the federal action, the United States presented three expert witnesses, all of whom buttressed its assertion that a number of mechanical and human failures, none of which were connected with Lewis, had caused the helicopter crash. Lewis also testified extensively about events relating to the accident.

10. The court concluded that Lewis should have expected to be bound by the decision of the federal court even though he had no control over the prior litigation. In doing so, the court found that the United States had acted in a representative capacity for Lewis given their identity of interest, the United States' actions in furthering that interest, and the ultimate issue to be litigated in both actions (to wit, the cause of the crash). *Lewis*, 266 Cal.Rptr. at 681. Moreover, the court noted that (1) discovery for both actions had been informally consolidated by the parties, and (2) Lewis' counsel had participated in two critical depositions, both of which had been taken as part of the federal action.

11. The court theorized that Lewis had the option to intervene in the federal action, but chose not to do so.

12. NCR claims that Northwest presented at least twenty eight witnesses, twenty four of whom were experts, in an effort to show that (1) the aircraft was defective and (2) there was no negligence on the part of the flight crew. (*See*, NCR Br. at 14).

13. During the trial, MDC had maintained that the acts and omissions of the decedent (along with the captain, John Richard Maus) were the sole and proximate cause of the crash and that such acts and omissions constituted "gross negligence and willful misconduct." (*See*, NCR Appendix, Exhibit B at 26–34. Answer of Defendant McDonnell Douglas Corporation to the Cross–Claim and Amended Third Party Complaint of Defendant Northwest Airlines, Inc.). As a result, MDC asserted that it was entitled to complete indemnification from Northwest.

14. The Plaintiff correctly argues that the joint liability trial did not necessarily involve a determination of the comparative fault of the Plaintiff's decedent and NCR. However, such a determination would be irrelevant given the finding of the jury that the flight crew, of which the decedent was a major participate, engaged in willful and wanton misconduct. *See*, *infra*, discussion under II.A.2.

15. In the joint liability trial, Northwest was unsuccessful in its attempt to assign fault to NCR.

that the Plaintiff's interests were adequately represented in the joint liability trial. In addition, given the identity of interests between Northwest and the decedent, the Plaintiff should have reasonably expected to be bound by the jury's verdict relating to the conduct of the flight crew immediately prior to impact.[16] Although the Plaintiff had a full and fair opportunity to pursue the decedent's claims, he apparently made a tactical decision to wait until after the commencement of the joint liability trial to pursue his claims— almost three years after the air crash.[17] Under Fed.R.Civ.P. 24(a)(2), he could have intervened in the multi-district litigation.[18] Thus, the Court finds that the Plaintiff's decedent and Northwest were in privity for collateral estoppel purposes.

Therefore, the Plaintiff is bound by the finding of the jury that the flight crew engaged in willful and wanton misconduct on August 16, 1987.[19]

### 2. Whether Michigan Law, Bars Plaintiff's Claims

■ In an earlier ruling, this Court opined that "the findings of the jury that Northwest engaged in willful and wanton misconduct under Michigan and federal law are synonymous with, and equivalent of, a 'willful or intentional wrongdoer' under Michigan law." *In re Air Crash at Detroit,* 791 F.Supp. at 1226–27. As a result, the Court concluded that Northwest's contribution claims against NCR were barred. *Id.* 791 F.Supp. at 1225–27. Here, the Plaintiff is not entitled to any mitigation of damages on the basis of comparative negligence of the parties since he engaged in intentional misconduct under Michigan law.[20] *Brown v. Swartz Creek Memorial Post 3720–Veterans of Foreign Wars, Inc.,* 214 Mich.App. 15, 542 N.W.2d 588 (1995). Hence, the Plaintiff's action is barred under Michigan law.[21]

Accordingly, NCR's motion for summary judgment is granted.

---

Northwest had presented witnesses who testified that, but for the presence of the light pole at NCR's facility, the aircraft would not have crashed. (*See, e.g.,* Trial Transcript Vol. 144 (Testimony of Benjamin Lightfoot); Vol. 177 (Testimony of Carl J. Steinhauer); Vol. 184 (Testimony of Dr. David Kohlman)). However, the jury found that Northwest was completely responsible for the crash.

**16.** At the joint liability trial, a massive amount of evidence was presented regarding the wrongful actions of the flight crew, including the Plaintiff's decedent. (*See, e.g.,* NCR Appendix, Exhibit E, Summary of Wrongful Actions by Flight 255 Crew).

**17.** It should be noted that the counsel for the Plaintiff participated in some pre-trial discovery matters. Indeed, the decedent's widow was represented by Plaintiff's counsel during a deposition involving the counsel for Northwest. (*See,* NCR Appendix, Exhibit D, Deposition Transcript of Jeanette Elain Dodds). Thus, contrary to the Plaintiff's contentions, he was in a position to pursue his claims against those parties who were allegedly responsible for the death of the decedent.

**18.** The Plaintiff could have also joined in the multi-district litigation prior to September 29, 1989. (*See,* NCR Appendix, Exhibit C, Order of August 18, 1989). He certainly knew of the multi-district litigation. Indeed, the decedent's

estate had been sued as early as 1987. (*See,* NCR Appendix, Exhibit A, Complaint filed in *Presti v. Northwest Airlines, Inc, et al,* U.S. Dist. Ct., D. Ariz., No. Civ 87–2220PHXRGS, later transferred to this district as part of MDL 742).

**19.** On the verdict form, the jury answered the following question in the affirmative:

Did Northwest Airlines and/or its flight crew engage in willful or wanton misconduct under Michigan law....
(NCR Appendix, Exhibit F, Verdict Form, Question 11, p. 3).

The Sixth Circuit subsequently affirmed the verdict, noting that there was "overwhelming evidence of wanton and willful misconduct on the part of Northwest's crew.... " *In re Air Crash Disaster Chester H. Polec v. Northwest Airlines, Inc.,* 86 F.3d 498, 534 (6th Cir.1996). Hence, based on the evidence presented at the trial, the jury necessarily weighed the acts and omissions of the flight crew, including the decedent. *See, supra,* n. 16. The decedent's subordinate rank does not protect him from being found culpable for willful and wanton misconduct. (*See,* NCR Appendix, Exhibit N, Order of October 4, 1991).

**20.** The Court has previously determined that Michigan law governs the legal significance of the jury's finding that the flight crew had engaged in willful and wanton misconduct immediately prior to the tragic accident. *See, In re Air Crash at Detroit,* 791 F.Supp. at 1225.

## B. *Governmental Immunity*

In its motion, Wayne County asserts that the Plaintiff cannot maintain its claims against the County[22] since it is entitled to governmental immunty.[23] The County is correct.

> Mich. Comp. Laws Ann. § 691.1407 states in pertinent part:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

This statute has been interpreted to provide a broad grant of immunity from tort liability. *See Ross v. Consumers Power Co. (On Rehearing)*, 420 Mich. 567, 618, 363 N.W.2d 641, 660 (1984). Indeed, a "governmental function" is defined under this governmental immunity statute as "an activity which is expressly or impliedly mandated or authorized by construction, statute, local charter or ordinance, or other law." Mich. Comp. Laws Ann. § 691.1401(f).

There are a number of statutes which regulate the establishment, operation and maintenance of the Metropolitan Airport, including its runways and taxiways. In particular, Mich. Comp. Laws Ann. § 259.132 provides:

> The acquisition of any lands for the purpose of establishing airports, landing fields or other aeronautical facilities; the acquisition of airport protection privileges; the acquisition, establishment, construction, enlargement, improvements, maintenance, equipment and operation of airports, landing fields and other aeronautical facilities, and the exercise of any other powers herein granted to political subdivisions of this state, are hereby declared public, governmental and municipal functions, exercised for a public purpose, and matters of public necessity.

In *Codd v. County of Wayne*, 210 Mich. App. 133, 537 N.W.2d 453 (1995), the Michigan Court of Appeals determined that the operation of the Metropolitan Airport (including the design, building, operation, and maintenance of airport premises, as well as its airfield) is a governmental function. Yet, the Plaintiff argues that the County is not entitled to an immunity defense since its claims fall within the proprietary function exception to governmental immunity under Mich. Comp. Laws Ann. § 691.1413.

The proprietary function exception to the doctrine of governmental immunity is set forth in Mich. Comp. Laws Ann. § 691.1413 as follows:

> The immunity of the governmental agency shall not apply to actions to recover for

**21.** Although the Plaintiff indicated in his brief that he may assert a claim for intentional nuisance against NCR, he has failed to state the particulars of any such claim. However, even if he had made such an assertion, this claim would not have mandated a different result.

**22.** For ease of reference, the Court will use "Wayne County" and "County" interchangeably throughout the remainder of this Order.

**23.** In its Complaint, the Dodds estate asserts the following claims against the County:

34. Wayne County, Michigan was negligent in causing or permitting one or more obstructions, including an electric light pole and other obstructions to be and remain in the flight path of aircraft taking off from Runway 3 Center, which light pole was struck by said aircraft resulting in said crash.

35. Wayne County, Michigan was also negligent in causing and permitting said Runway 3 Center to be in an unsafe condition for the takeoff of aircraft such as Flight #255, in that said runway was considerably shorter than other runways at Detroit Metropolitan Airport, and said shorter runway would knowingly and did in respect to the subject crash, give pilots of said Flight #255 inadequate takeoff distance for Flight #255; and said negligence was compounded by the placement of obstructions proximate to the end of said runway, on property owned and under control of Wayne County, Michigan, which further contributed to deprive the pilot and co-pilot of said Flight #255 of the maximum safety tolerance in the event of an emergency situation, and but for such negligence, the aircraft could have accomplished a successful takeoff.

36. Wayne County, Michigan was further negligent in regard to the dimensions and location of said runway, and in regard to the presence of obstructions. approximately one-half mile from the end of said runway, including said electric light pole and building, which light pole and building were struck by Flight #255.

(County Appendix, Exhibit B, Plaintiff's Complaint, Count V).

bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding however, any activity normally supported by taxes or fees. No action shall be brought against the governmental agency for injury or property damage arising out of the operation of proprietary function, except for injury or loss suffered on or after July 1, 1965.

The Michigan Supreme Court in *Hyde v. University of Michigan Bd. of Regents,* 426 Mich. 223, 258, 393 N.W.2d 847 (1986), set forth the test for determining a proprietary function as follows:

> Before an activity is deemed a proprietary function, it must satisfy two tests: (1) the activity must be conducted primarily for the purpose of producing a pecuniary profit; and (2) the activity cannot normally be supported by taxes or fees.

■ In assessing whether the activity produces a pecuniary profit, a court must consider (1) whether the activity produces a profit and (2) where any profit generated by the activity is deposited and spent. *See, Hyde,* 426 Mich. at 258–259, 393 N.W.2d 847. Likewise, a court must only consider whether the activity is normally supported by taxes or fees. *Id.,* 426 Mich. at 260 n. 32, 393 N.W.2d 847.

As in *Codd,* the County submitted the affidavit of Robert Braun, the Director of Airports for the County of Wayne, in which he states:

3. That the property leased to National Car Rental by Wayne County constitutes a portion of the property used by Wayne County for Airport Operations.

4. That the revenue from Wayne County's lease with National Car Rental is part of all revenues produced at the Airport, and is used to perpetuate only Airport related needs including maintenance and improvements.

5. That none of the revenue produced from Wayne County's lease with National Car Rental is used to finance functions unrelated to the Airport.

6. That none of the revenues produced from Wayne County's lease with National Car Rental is distributed as profit.

Braun also incorporated his affidavit by reference that had been filed by him in support of the County's motion for summary judgment in *Codd.* In *Codd,* the court noted that Braun affidavit provided:

> that the airport is normally supported by taxes and fees, and that a landing fee is assessed each airline flying into the airport. All landing fees, together with all other revenue from airport tenants and concessionaires, are used solely for the operation of the airport.

210 Mich.App. at 136, 537 N.W.2d 453.

Even though the state court did not make a finding as to whether the airport produced a pecuniary profit, it did opine that the airport is normally supported by taxes and fees. Hence, it determined that the proprietary function exception did not apply and therefore the County was entitled to immunity.

■ Similarly, the Plaintiff has not demonstrated to the satisfaction of this Court that the airport is not an activity which is normally supported by taxes or fees. Instead, he argues that the County entered into a lease agreement with NCR, which, in his judgment, is a proprietary function. However, the Braun's affidavits establish that the airport is not operated to produce a pecuniary profit. Indeed, Braun avers that all revenue that are generated by the Metropolitan Airport tenants are used only on Airport related needs, e.g., maintenance and improvements. The Plaintiff asserts that there is no tax involved in the specific lease agreement; to wit, there is no statutory taxing provision covering leasing agreements involving Metropolitan Airport. However, the operation of Metropolitan Airport is normally supported by taxes or fees. Here, the lease agreement falls within the operations of the Airport.

Accordingly, Wayne County's motion for summary judgment is granted.

### III.

Inasmuch as the Court has granted the Defendants' request for summary judgment, the Plaintiff's action is dismissed in its entirety.

IT IS SO ORDERED.

*JUDGMENT*

On this date, the Court entered an Order which dismissed the instant cause of action. Accordingly, a judgment shall be entered in favor of the Defendants, National Car Rental Systems, Inc., and County of Wayne, Michigan, and against the Plaintiff, Gerald L. Dodds, Executor of the Estate of David J. Dodds, Deceased.

IT IS SO ORDERED.